# Exhibit A



ENTRADA
TRIBUNAL PLENO E DE RECURSO
N.º 13/21
Data: 25 . 03 . 2021
Ass.: Odete Chaquia

**SÉRGIO RAIMUNDO**
**& ASSOCIADOS**

*ESCRITÓRIO DE ADVOGADOS*
*TEL.925687172/915687172*
*EMAIL: sergioraimundo@sergioraimundo.com*

Proc. N.º 118/20

Venerandos Juízes Conselheiros

Do Plenário do Supremo

AENERGY, S.A., Recorrente nos autos acima identificados, notificada que foi da CONTESTAÇÃO apresentada pelo Ministério Público, em representação do Estado Angolano e do Titular do Poder Executivo, vem nos termos do disposto no artigo 502.º do Código de Processo Civil *ex vi* art.1.º, n.º2 do Regulamento do Processo Contencioso Administrativo, apresentar a sua

## RÉPLICA

O que faz nos termos seguintes:

I.- Da alegada Questão Prévia

### 1.º

Na contestação dos Recorridos, nos artigos 4.º a 7.º, alude-se a uma hipotética "questão prévia", onde são feitas acusações caluniosas, irresponsáveis e delirantes à Recorrente e ao seu mandatário sobre a suposta adulteração ou falsificação de documentos relevantes para a determinação do valor da acção.

### 2.º

No artigo 5.º da contestação é referido que a Recorrente tentou induzir o tribunal em erro à cerca do valor dos 13 Contratos celebrados entre a Recorrente e as entidades públicas contratantes (PRODEL, E.P., ENDE, E.P. e MINEA), inscrevendo valores inferiores nos documentos contratuais juntos com o Recurso Contencioso de Anulação, o que é completamente falso.

### 3.º

Sucede que parte das cópias dos contratos juntos pela Recorrente na acção, com visto do tribunal de contas, têm na sua digitalização, por mero lapso, a omissão do valor contratual.

www.sergioraimundo.com

Escritório Benguela:
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda:
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.co
benguela@sergioraimund

### 4.º

No entanto, tal facto não conduziria de maneira alguma às delirantes acusações dos Recorridos, considerando que, no artigo 11.º do Recurso Contencioso de Anulação, a Recorrente descreve detalhadamente os 13 Contratos celebrados, referindo expressamente o respectivo valor monetário de cada um, para além do facto de os valores dos contratos serem públicos, nos termos dos despachos presidenciais que os aprovaram.

### 5.º

Fazendo o confronto entre o conteúdo do artigo 11.º do Recurso Contencioso de Anulação e do artigo 58.º da Contestação apresentada pelos Recorridos, observa-se que nenhuma divergência existe entre as Partes sobre o valor de cada um dos Contratos objecto da resolução contractual.

### 6.º

A única divergência que observamos quanto aos valores dos contratos é no cálculo da soma dos valores dos 13 Contratos que na Contestação calculam em USD 1,027,581.869,48 mas cuja soma correcta é antes de USD 1,147,496.460,99.

### 7.º

Neste sentido, como pode a Recorrente ser acusada de induzir o Venerando Tribunal em erro sobre o valor monetário de cada um dos contratos se ambos os articulados das partes são expressamente coincidentes sobre esses mesmos valores?

### 8.º

Ora, os Recorridos não podiam ignorar o artigo 11.º do Recurso Contencioso de Anulação apresentado pela Recorrente e da completa falsidade e irracionalidade da tese de adulteração do valor dos contratos.

### 9.º

Com efeito, as alegações dos Recorridos sobre uma suposta má-fé da Recorrente só podem ser classificadas como delirantes e difamatórias, procurando confundir o tribunal e lançar uma cortina de fumo sobre a matéria essencial objecto da presente acção, demonstrando, desde logo, na introdução da contestação, ao que vêm.

### 10.º

Quanto ao valor da causa, a Recorrente respeitou integralmente o disposto no artigo 15.º do Decreto-Lei n.º 4-A/96, de 5 de Abril (o "RPCA") que estabelece que "aos recursos contenciosos é atribuído um valor certo, expresso em moeda com curso legal, correspondente a utilidade económica que directa ou indirectamente derive de pedido".

### 11.º

Mais uma vez, os Recorridos pretendem confundir o Venerando Tribunal invocando a aplicação do artigo 16.º do RPCA quando estamos perante um recurso contencioso de anulação de acto administrativo, sendo inaplicável o referido artigo 16.º.

## II - Da alegada preterição do tribunal arbitral

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº 32

E-mails:
geral@sergioraim
benguela@sergio

## 12.º

A excepção de preterição do tribunal arbitral invocada pelos Recorridos carece de qualquer fundamento, atento o objecto da acção.

## 13.º

Ora, são os próprios Recorridos a afirmar que "os co-Recorrentes PRODEL e ENDE, em vez de agirem em representação do Estado Angolano na qualidade de proprietários dos projectos, celebraram onze contratos em nome próprio" (art. 55.º da Contestação).

## 14.º

A verdade é que, bem ou mal (ver-se-á mais tarde), revela-se absolutamente inequívoco e até aceite por todas as partes que quem celebrou os contratos com a Recorrente foram a PRODEL e a ENDE, e que são elas, por conseguinte, as partes contratuais.

## 15.º

Mas a verdade indesmentível é que nenhum litígio existe ou existiu entre a Recorrente e as suas contrapartes (PRODEL e ENDE) no âmbito da interpretação ou execução dos contratos que celebraram.

## 16.º

É indesmentível que não foram as contrapartes PRODEL ou ENDE que rescindiram os contratos.

## 17.º

É indesmentível que não foram as contrapartes PRODEL ou ENDE que apareceram a invocar razões de interesse público ou de incumprimento contratual para pôr termo aos contratos que tinham celebrado.

## 18.º

Quem veio pôr termo aos contratos, por rescisão dos mesmos, foram os Recorridos Titular do Poder Executivo e MINEA.

## 19.º

Os quais não são parte nos contratos – como expressamente reconheceram (cfr. o art. 55.º da Contestação).

## 20.º

O litígio que a Recorrente tem com os Recorridos por força da rescisão dos contratos não é um litígio contratual, nascido da interpretação ou execução de tais contratos.

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo

### 21.º

É um litígio com terceiros aos contratos, que invocaram as suas prerrogativas extracontratuais para lhes pôr termo.

### 22.º

De facto, os Recorridos não são partes na generalidade dos contratos.

### 23.º

Ou, quando excecionalmente o são – como sucede com o Recorrido MINEA no contrato n.º 07/ENDE-PIP/2017 e no contrato relativo à Central de Malembo – não invocaram a existência de qualquer litígio relativo a esses específicos contratos.

### 24.º

Porque a rescisão dos contratos, mesmo nos casos excepcionais em que o Recorrido MINEA é parte, corresponde ao exercício de uma prerrogativa baseada em razões de interesse público: por outras palavras, a causa da rescisão foi em todos os casos "a necessidade, por manifesto interesse público, da cessação dos contratos", na sequência de uma "irremediável perda de confiança" na Recorrente (cfr. o ponto 8. do despacho de indeferimento da reclamação apresentada ao MINEA).

### 25.º

O litígio objecto dos presentes autos entre a Recorrente e os Recorridos não é, pois, um litígio contratual, quer porque os Recorridos não são parte na generalidade dos contratos quer porque, nos casos excepcionais que o são, o litígio não se refere à interpretação ou execução de específicos contratos, mas ao exercício (ilegal) de prerrogativas extracontratuais de rescisão.

### 26.º

Não sendo o litígio dos presentes autos um litígio entre as partes relativamente à interpretação e execução dos contratos, extravasa obviamente do âmbito das cláusulas de arbitragem.

### 27.º

Por outro lado, mesmo que assim não se entendesse, o que se faz por mera cautela de patrocínio, o artigo 71.º, n.º 1 do RCPA estabelece a proibição de arbitragem nos contratos administrativos, salvo as excepções previstas na lei, as quais a Recorrida não logrou demonstrar.

### 28.º

Falece assim, por inteiro, qualquer razoabilidade à invocação da preterição do tribunal arbitral, devendo a correspondente excepção ser julgada liminarmente improcedente.

www.sergioraimundo.com

em Luanda
Alcalade
lder Neto, nº 50

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.
benguela@sergioraimu

## III - Do alegado erro na forma de processo

### 29.º

Afirmam os Recorridos que a rescisão unilateral dos contratos "não constituiu um acto subsumível nas disposições legais relativas à impugnação do acto administrativo, mas sim uma declaração negocial emitida pela parte contratante, sujeita à disciplina dos referidos negócios jurídicos".

### 30.º

Por isso, a contestação da legalidade da rescisão, por ser matéria derivada de contratos administrativos, teria de ser feita por via de uma ação administrativa, e não do presente recurso contencioso de anulação de actos administrativos: isso mesmo decorreria do disposto nos arts. 2.º e 3.º da Lei n.º 2/94, de 14 de Maio.

### 31.º

O Recorrente confessa a sua incapacidade de compreender qual é a posição dos Recorridos quanto à questão simples e linear de saber quem é afinal parte nos contratos.

### 32.º

Com efeito, os Recorridos tanto sustentam que as partes contratantes são a PRODEL e a ENDE (art. 55.º da Contestação, cfr. *supra*), como sustentam que as partes contratantes são os Recorridos, ou pelo menos o MINEA (arts. 20.º e 21º da Contestação).

### 33.º

Duas coisas são, todavia, muito claras: a primeira é que os Recorridos descuram a existência em sede contratual de actos administrativos que definem autoritariamente situações jurídicas; a segunda é que interpretam de forma flagrantemente errónea o disposto nas normas que invocam na Lei n.º 2/94.

### 34.º

Começando pela primeira questão, os Recorridos perfilham a estranha concepção de que onde existem contratos, não existem actos administrativos definitivos e executórios.

### 35.º

Mas não é assim, obviamente: os actos administrativos de autoridade podem surgir, e surgem com frequência, em sede de execução dos contratos.

### 36.º

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

O art. 359.º da Lei dos Contratos Públicos (Lei n.º 9/16 de 16 de Junho, doravante "LCP"), que tem por significativa epígrafe "Poderes da entidade pública contratante"), é muito claro na separação, em sede contratual, entre os actos administrativos de autoridade e aqueles que não têm essa natureza.

### 37.º

Os primeiros estão identificados no n.º 1:

*1. Salvo quando o contrário resultar da natureza do contrato ou da lei, a entidade pública contratante pode, nos termos do disposto no contrato e na presente Lei:*

*a) Dirigir o modo de execução das prestações;*

*b) Fiscalizar o modo de execução do contrato;*

*c) Modificar unilateralmente as cláusulas respeitantes ao conteúdo e ao modo de execução das prestações previstas no contrato por razões de interesse público;*

*d) Aplicar as sanções previstas para a violação de obrigações contratuais;*

*e) Resolver unilateralmente o contrato.*

### 38.º

Os segundos estão referidos no n.º 2:

*2. Os actos administrativos que interpretem cláusulas contratuais ou que se pronunciem sobre a respetiva validade não são definitivos e executórios, pelo que, na falta de acordo do cocontratante, a entidade pública contratante só pode obter os efeitos pretendidos através de decisão judicial.*

### 39.º

A entidade pública contratante não pode definir imperativamente qual a interpretação a dar ao contrato ou se este é válido ou inválido: estes são os domínios das meras declarações negociais, onde não podem existir actos de autoridade.

### 40.º

Em contrapartida, nas matérias do n.º 1 podem ser exercidos poderes de autoridade, sob a forma de actos administrativos definitivos e executórios.

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

n° 50

7

### 41.º

Tais matérias incluem a resolução do contrato: como se estabelece na al. e), a resolução dos contratos pode ser feita por acto administrativo definitivo e executório.

### 42.º

Este regime vai ser confirmado no art. 376.º da LCP, onde se prevê que a resolução do contrato possa ocorrer por "decisão da entidade pública contratante" ("decisão" significa acto administrativo, como resulta do art. 63.º das Normas do Procedimento e da Actividade Administrativa, aprovadas pelo Decreto-Lei n.º 16-A/95, de 15 de Dezembro).

### 43.º

A resolução por via de acto administrativo definitivo e executório pode corresponder à aplicação de sanção, por grave violação das obrigações da contraparte (art. 379.º da LCP), ou por fundar-se em razões de interesse público (art. 380.º da LCP).

### 44.º

Ora, a contestação em juízo dos actos de autoridade praticados no contexto do contrato pode e deve ser feita pela via do recurso contencioso, nos termos gerais da Lei n.º 2/94.

### 45.º

Nas matérias contratuais em que não possam ser proferidos pela Administração actos administrativos de autoridade, mas apenas declarações negociais, a solução dos litígios continua a pertencer aos tribunais administrativos, mas segue a via processual da acção administrativa: art. 2.º, n.º 1, da Lei n.º 2/94.

### 46.º

É uma opção legislativa que não coincide com a que se aplica às questões em matéria de responsabilidade civil da Administração, em que a via processual continua a ser a acção, mas agora de natureza cível: art. 2.º, n.º 2, da Lei n.º 2/94.

### 47.º

O sentido do n.º 1 do art. 2.º da Lei n.º 2/94 não é, obviamente, o de determinar que os litígios em matéria contratual estão excluídos do âmbito do recurso, devendo seguir a via da acção.

### 48.º

O alcance da norma é estabelecer que nos casos em que os preceitos aplicáveis determinem que se utilize a acção, esta tem natureza administrativa e não natureza cível, cabendo o seu julgamento às instâncias judiciais administrativas.

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

8

### 49.º

Por outras palavras, a norma do n.º 1 do art. 2.º não tem a função de estabelecer a fronteira entre o recurso contencioso e a acção, porque essa função cabe a outras normas (*v. g.*, as normas da LCP).

### 50.º

A norma do n.º 1 do art. 2.º pressupõe que essa fronteira já está estabelecida por outros preceitos e tem a função de determinar que a acção siga os termos do processo administrativo, e não do processo cível, e que seja julgada pelas instâncias administrativas, e não pelas instâncias cíveis.

### 51.º

Por conseguinte, a Recorrente lançou efectivamente mão da via processual adequada, que corresponde ao recurso contencioso, porque a sua intenção é reagir contra a ilegalidade de actos administrativos definitivos e executórios de resolução dos contratos administrativos.

### 52.º

Para efeitos de determinação da via processual a utilizar não importa saber se os Recorrentes tinham de facto o poder de resolver o contrato: essa questão importa para a legalidade ou ilegalidade dos actos de resolução, mas não para a natureza autoritária de tais actos, nem para a via processual a utilizar para a sua contestação.

### 53.º

Não pode, assim, deixar de improceder a excepção de erro na forma de processo (ou no tipo ou espécie de acção, como dizem os Recorridos).

### IV – Da alegada irrecorribilidade da decisão do Titular do Poder Executivo sobre o recurso hierárquico

### 54.º

A excepção de irrecorribilidade da decisão de indeferimento do recurso hierárquico pelo Recorrido Titular do Poder Executivo invoca uma pretensa natureza confirmativa desta decisão, sendo o acto do Recorrido MINEA apresentado como a decisão confirmada.

### 55.º

Ora não é assim, porque a confirmatividade enquanto causa de irrecorribilidade contenciosa pressupõe que entre o acto confirmativo e o acto confirmado exista total identidade de objecto, de conteúdo e de fundamentos.

### 56.º

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

9

Quer isto dizer que a matéria tratada pelos dois actos tem de ser idêntica, que o conteúdo da decisão tem de ser idêntico e que os fundamentos dessa decisão têm também de ser idênticos.

### 57.º

Sucede que no caso dos autos os fundamentos da decisão do Recorrido Titular do Poder Executivo não são idênticos aos fundamentos da decisão do Recorrido MINEA: se assim fosse, o Titular do Poder Executivo limitar-se-ia a fundar a sua decisão no teor do indeferimento da reclamação pelo MINEA.

### 58.º

Ora, o recurso hierárquico foi indeferido não apenas com base na pronúncia do MINEA, mas também com os fundamentos do parecer da Secretaria para os Assuntos Judiciais e Jurídicos da Casa Civil do Presidente da República, conforme se pode ler na notificação constante do Ofício com a Ref.ª 937/SAIJ/C.CIV./PR/2019, enviado à Recorrente pela dita Secretaria.

### 59.º

Apesar de ter requerido a notificação da pronúncia do MINEA e do parecer elaborado pela Secretaria para os Assuntos Judiciais e Jurídicos, a Recorrente nunca teve acesso a estes documentos antes da propositura do presente recurso contencioso de anulação.

### 60.º

E esta circunstância de a Recorrente não conhecer os fundamentos da decisão do recurso hierárquico impede por si só que lhe possa ser oposta a excepção de irrecorribilidade contenciosa do acto impugnado, com base no carácter confirmativo do mesmo.

### 61.º

Mas ainda que lhe tivessem sido dados a conhecer tais documentos, é óbvio que não poderá haver coincidência total entre ambos, pois se assim fosse o parecer da Secretaria para os Assuntos Judiciais e Jurídicos seria irrelevante, careceria de autonomia, e o Titular do Poder Executivo nem lhe faria referência na sua decisão.

### 62.º

Um terceiro e último argumento para a improcedência da excepção da irrecorribilidade fundada no alegado carácter confirmativo do acto reside na norma do n.º 2 do art. 14.º da Lei n.º 2/94: se a contagem do prazo de recurso contencioso se conta a partir da notificação da decisão que recair sobre o recurso hierárquico, é porque a decisão do recurso hierárquico é recorrível contenciosamente.

### 63.º



Sede Benguela
Rua António José de Almeida
N.º 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº 32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com



A solução legal, aliás, faz todo o sentido, à luz da concepção sustentada por muitos sectores da doutrina segundo a qual a confirmatividade de um acto exige não apenas a identidade de objecto e de fundamentos das decisões, mas também a identidade de sujeitos: ou seja, só há confirmatividade se o autor dos dois actos for o mesmo.

## 64.º

Por todas as razões expostas, deve ser julgada improcedente a excepção de irrecorribilidade da decisão de indeferimento do recurso hierárquico adoptada pelo Recorrido Titular do Poder Executivo.

## V – Da alegada excepção de inexistência de acto administrativo

## 65.º

A parte da Contestação dos Recorridos relativa à pretensa inexistência de acto administrativo contenciosamente impugnável releva-se de difícil compreensão, porque – aparentemente – confundem-se dois planos e misturam-se duas questões.

## 66.º

Uma questão é a de saber se existiu de facto uma decisão de rescisão do MINEA, ou apenas um ofício do seu Chefe de Gabinete.

## 67.º

Outra questão é a de saber se a rescisão – que afinal existe! – é uma mera declaração negocial, como sustentam os Recorridos, ou um acto administrativo contenciosamente impugnável.

## 68.º

A primeira questão carece na realidade de qualquer sentido, desde que se tenha presente que um ofício de notificação refere-se sempre a uma realidade notificada, pois tal ofício constitui um mero acto instrumental, destinado a dar a conhecer ao destinatário essa realidade anterior.

## 69.º

No caso dos autos, o chefe de gabinete do MINEA dirigiu à Recorrente o ofício 1558/GAB.MINEA/19, de 2 de Setembro de 2019, notificando-a da efectiva rescisão dos contratos, na sequência de um anterior ofício (n.º 0071/GAB/MINEA/19, de 10 de Janeiro de 2019), pelo qual "o MINEA confirmou à AENERGIA, S.A., a intenção irreversível de rescisão dos contratos".

## 70.º

Ora, não foi decerto o chefe de gabinete que proferiu a rescisão...



www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

### 71.º

Estarão os Recorridos a afirmar que a rescisão não coube ao MINEA, mas ao chefe de gabinete, e que o ofício afinal não comunicou uma decisão do MINEA, mas uma decisão do chefe de gabinete (ou sabe-se lá de quem)?!!!...

### 72.º

Essa inexistente decisão do MINEA, pasme-se!, veio a ser confirmada pelo MINEA, ao decidir a reclamação da Recorrente!

### 73.º

E viria a ser confirmada pelo Titular do Poder Executivo, ao decidir o recurso hierárquico da Recorrente – apesar de não existir!

### 74.º

Trata-se, com o devido respeito, de uma alegação tão desconexa e absurda que se torna inclusivamente difícil responder-lhe.

### 75.º

Aliás, nem sequer se percebe o sentido útil desta surpreendente excepção de inexistência do acto administrativo, uma vez que o presente recurso contencioso ficaria sempre com objecto suficiente, constituído pela decisão do Titular do Poder Executivo, cuja existência não é negada na Contestação.

### 76.º

Como já ficou dito, esta alegação surge mesclada com outra, segundo a qual a rescisão dos contratos constituiria uma mera declaração negocial, sem a natureza de acto administrativo definitivo e executório.

### 77.º

Mas, como já ficou acima demonstrado, a qualificação da rescisão como declaração negocial é errónea e contraria frontalmente a lei, designadamente as seguintes normas da Lei dos Contratos Públicos:

a) Art. 359.º, n.º 1, al. e);

b) Art. 359.º, n.º 2, *a contrario*;

c) Art. 376.º, n.º 2, al. b);

d) Art. 379.º;

e) Art. 380.º, n.º 1, al. a).

### 78.º

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº 32

E-mails:
geral@sergioraimundo.co
benguela@sergioraimund

E mesmo que se quisesse qualificar algum dos contratos rescindidos como um estricto contrato de empreitada (na verdade, todos eles são contratos de aquisição de bens e serviços, a que ocasionalmente se anexam algumas prestações típicas da empreitada), ainda assim se teria de reconhecer que as normas específicas da empreitada atribuem às decisões ou deliberações do dono da obra a natureza jurídica de actos administrativos definitivos, como resulta do art. 329.º da LCP.

## 79.º

Acrescem a estes equívocos dos Recorridos algumas outras afirmações que não podem deixar de considerar-se juridicamente erróneas ou até contraditórias, como a alegação de que a declaração negocial de rescisão foi proferida no exercício de poderes delegados (art. 36.º da Contestação).

## 80.º

De facto, como resulta da simples leitura do n.º 1 do art. 12.º das Normas do Procedimento e da Actividade Administrativa, a delegação tem sempre por objecto a prática pelo delegante de actos administrativos.

## 81.º

A delegação é, necessariamente, para a prática de actos administrativos, nunca para a emissão de declarações negociais: por isso, não sendo legalmente possível uma delegação para emitir declarações negociais, se houve delegação, é porque se praticaram actos administrativos.

## 82.º

Outra contradição evidente em que caem os Recorridos encontra-se no art. 38.º da Contestação, quando sustentam que a declaração negocial se tornou "definitiva e exequível".

## 83.º

Ora, o que é "definitivo e exequível" (ou executório, se se preferir) é um acto administrativo.

## 84.º

Um acto administrativo pode, de facto, tornar-se definitivo e executório, adquirindo as notas plenas de autoridade.

## 85.º

Já uma declaração negocial não se pode tornar definitiva e executória (ou exequível), porque isso significaria que era afinal não uma declaração negocial, mas um acto administrativo de autoridade...

## 86.º

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com





13

Mas se esta afirmação contraditória já se afigura por si dificilmente compreensível, ainda mais incompreensível é pretender fundá-la no art. 230º do Código Civil, que trata das propostas de contrato.

### 87.º

Das duas, uma: ou a invocação do art. 230.º é um lapso, ficando por saber qual era a norma que se pretendia referir; ou não é um lapso, ficando então por saber qual a relação que existe entre o regime da irrevogabilidade das propostas de celebração de contrato dirigidas ao público ou a um destinatário específico e a matéria completamente diversa da rescisão de contratos, obviamente já celebrados.

### 88.º

Muito menos se percebe o que tem a ver tudo isto com o abuso de direito...

### 89.º

Por tudo o que se expôs, é óbvia a improcedência da invocação da excepção de inexistência de acto administrativo.

## VI – Da alegada excepção da incompetência da PRODEL e da ENDE para a celebração dos contratos

### 90.º

Sustentam os Recorridos que os contratos celebrados pela PRODEL e pela ENDE são nulos, por incompetência por falta de atribuições: como se verá, não é verdade; mas ainda que o fosse, que excepção pretendem os Recorrentes fundar nessa pretensa nulidade?

### 91.º

Antes de mais, não é verdade que os contratos sejam nulos por vício de incompetência por falta de atribuições.

### 92.º

Não é verdade, em primeiro lugar, porque nas atribuições das empresas incluem-se os fins visados com a celebração dos contratos em causa.

### 93.º

Ou seja, as matérias a que se referem os contratos inserem-se plenamente no objecto social das empresas, tal como definido no art. 4.º do Estatuto Orgânico da Empresa Pública de Produção de Electricidade (Anexo II do Decreto Presidencial n.º 305/14, de 20 de Novembro) e no art. 4.º do

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

14

Estatuto Orgânico da Empresa Nacional de Distribuição de Electricidade (Anexo III do mesmo Decreto Presidencial n.º 305/14).

**94.º**

Não pode haver, pois, dúvida legítima de que o objecto e as finalidades dos contratos se inserem nas atribuições que devem ser prosseguidas pelas empresas que os celebraram.

**95.º**

Coisa diferente é saber se as empresas estavam devidamente habilitadas para celebrar aqueles concretos contratos, ou se havia, v. g., autorizações ou outras formalidades em falta: mas esta questão nada tem que ver as atribuições das empresas, nada tem que ver com a competência e não conduz em caso algum a uma pretensa incompetência por falta de atribuições.

**96.º**

O que diz respeito às atribuições e à competência é simplesmente a questão das finalidades a prosseguir e dos instrumentos jurídicos disponíveis para essa prossecução.

**97.º**

Os pressupostos, requisitos e condições em que tais instrumentos jurídicos (p. ex., a celebração de contratos) podem ser utilizados nada têm que ver com as atribuições e a competência e por isso, quando desrespeitados, nunca conduzem ao vício de incompetência, mas sim ao vício de forma, ao erro nos pressupostos, à violação de lei, ao desvio de poder, etc..

**98.º**

Por outro lado, e mesmo que assim não fosse, nunca poderia aplicar-se aos ditos contratos a sanção de nulidade prevista no art. 76.º, n.º 2, al. b), das Normas do Procedimento e da Actividade Administrativa, porque este preceito aplica-se aos actos administrativos e não aos contratos.

**99.º**

O referido art. 76.º e os preceitos subsequentes dessa Secção IV são efetivamente inaplicáveis, porque regulam a matéria da invalidade dos actos administrativos, e não a matéria da invalidade dos contratos administrativos.

**100.º**

Mas pergunta-se: ainda que fossem aplicáveis e que os contratos fossem nulos, que consequência pretendem daí retirar os Recorridos em sede de excepção processual?

**101.º**

O recurso contencioso já não pode ser admitido ou já não pode ser julgado porque os contratos são (alegadamente) nulos?

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

### 102.º

É que o objecto do presente recurso contencioso não são esses contratos, mas sim a sua rescisão; e a questão que agora se coloca, em sede de excepções, é saber se os pressupostos processuais do recurso contencioso ficariam de algum modo em causa pela nulidade dos contratos.

### 103.º

Ora, a verdade é que a validade ou invalidade dos contratos não constitui, directa ou indirectamente, matéria de excepção dilatória nos presentes autos, não se descortinando assim o alcance da invocação da sua nulidade (aliás, errónea) nesta sede de excepções.

## VII – Da alegada excepção de nulidade dos despachos presidenciais de autorização

### 104.º

Ainda em sede de excepções, vêm os Recorridos invocar a nulidade dos despachos presidenciais de autorização da celebração dos contratos e de aprovação das respetivas minutas.

### 105.º

Adiante-se desde já que sendo os despachos imputáveis ao Titular do Poder Executivo, a invocação de nulidade pelo próprio agente que lhe dá origem viola o princípio da boa fé, na vertente expressa no brocado latino, vigente desde há muitos séculos: *Nemo auditur propriam turpitudinem allegans*, ou seja, ninguém pode ser admitido a prevalecer-se da ilegalidade que praticou.

### 106.º

O Tribunal não pode, pois, atender a esta linha de defesa, que se deve rejeitar liminarmente.

### 107.º

Deve dizer-se, em todo o caso, que se tata de uma linha de defesa bem frágil e que não é fácil descortinar a sua valia como excepção.

Vejamos.

### 108.º

Os Recorridos sustentam que os despachos violam a Constituição e a lei e que, por isso, são nulos.

### 109.º

Ora, se os despachos são ou não inconstitucionais ou ilegais, essa é matéria que pertence ao fundo da causa e que será, por isso, debatida oportunamente.

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº 32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

**110.º**

Agora uma conclusão é certa e segura: mesmo que fossem inconstitucionais ou ilegais, nunca seriam nulos (v. *infra*).

**111.º**

E mesmo que o fossem, daí não resultaria a inexistência jurídica dos contratos, afirmação contida no art. 66.º da Contestação e que evidencia uma total ausência de sustentação jurídica.

**112.º**

Mas a verdade é que não há nulidade: nenhum princípio ou norma prevê a nulidade para os actos administrativos inconstitucionais e é significativo que os Recorridos não invoquem qualquer base legal para esta fantasiosa afirmação.

**113.º**

O que resulta do art. 6.º, n.º 3, e do art. 226.º, n.º 1, da Constituição é apenas que os actos que violem a Constituição são inválidos, mas não se diz nesses preceitos se a forma de invalidade é a nulidade ou a anulabilidade.

**114.º**

Tratando-se de actos administrativos, a regra é precisamente que a invalidade assume a forma de anulabilidade e que só há nulidade nos casos previstos no art. 76.º das Normas do Procedimento e da Actividade Administrativa (ou em preceitos avulsos).

**115.º**

É o que está estabelecido com toda a clareza no art. 78.º: os actos administrativos que violem princípios ou normas jurídicas são anuláveis, sempre que não exista preceito específico a prever outra sanção.

**116.º**

Os Recorridos não invocam nenhuma norma, porque não existe, que comine a nulidade para os despachos presidenciais, na eventualidade de estes padecerem de algum vício.

**117.º**

Portanto, se padecerem de algum vício – o que agora não está em discussão – serão anuláveis.

**118.º**

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.co
benguela@sergioraimund

E a anulabilidade tem de ser invocada nos termos das leis do contencioso administrativo, que estabelecem prazos apertados de impugnação (cfr. o art. 79.º das Normas do Procedimento e da Actividade Administrativa e os arts. 13.º e 14.º da Lei n.º 2/94).

### 119.º

Prazos esses que, no caso dos despachos presidenciais em causa, já se esgotaram há muito.

### 120.º

Com a consequência de a sua (eventual) invalidade já não poder hoje ser invocada, designadamente nos presentes autos.

## VIII – Da alegada excepção de caducidade do direito da Recorrente de celebrar os contratos

### 121.º

Os Recorridos vêm, por fim, invocar em sede de excepções uma alegada caducidade do direito da Recorrente de celebrar os contratos que viriam ser rescindidos.

### 122.º

Ainda que tal caducidade tivesse ocorrido – o que só se admite para efeitos de raciocínio – a realidade insofismável é que os contratos foram efectivamente celebrados.

### 123.º

A ser verdade, como querem os Recorridos, que havia caducidade do direito, quem podia tê-la invocado era o contraente público, para a partir daí se recusar a celebrar os contratos.

### 124.º

Sucede que a eventual caducidade do direito não foi invocada e, pelo contrário, os contratos foram celebrados – deste modo o problema, se é que houve problema, morreu aí.

## IX – Da acção instaurada no Tribunal do Distrito Sul de Nova Iorque

### 125.º

Conforme referido pelos Recorridos, a Recorrente iniciou um processo em 7 de Maio de 2020, no Tribunal de Nova Iorque, reclamando uma indemnização pelas perdas e danos causados na sequência do acto de rescisão ilegal dos Contratos, entre outros motivos aí alegados.

### 126.º

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com



A Recorrente intentou a acção de indemnização em Nova Iorque porque a mesma é autónoma e independente do presente recurso contencioso de anulação, o qual só tem como propósito o afastamento da ordem jurídica do acto ilegal de rescisão contratual.

### 127.º

O decurso do tempo e os efeitos gravemente danosos provocados pela rescisão ilegal dos contratos e a consequente destruição da actividade empresarial da Recorrente tornaram muito difícil a possibilidade de reintegração da Recorrente nos seus contratos, o único remédio disponível através deste Recurso Contencioso de Anulação.

### 128.º

Embora defenda que o Tribunal Federal de Nova Iorque é o fórum adequado à sua acção de indemnização, a Recorrente não quer abdicar da presente acção, até porque o Estado Angolano tomou a posição, no processo que corre termos no Tribunal de Nova Iorque, de que a presente acção deve ser esgotada antes que a Aenergy possa recuperar os seus danos;

### 129.º

A Recorrente não aceita essa posição do Estado Angolano defendida no Tribunal de Nova Iorque mas não quer deixar de salvaguardar todos os seus direitos relativos à obtenção de uma compensação naquele Tribunal.

## X – Da Litigância de Má-Fé

### 130.º

De todo o arrazoado de excepções e catálogo de invalidades invocadas pelos Recorridos é não só surpreendente ausência de lógica, racionalidade legal mas também o facto, flagrantemente chocante, de o representante dos Recorridos nesta acção, a Procuradoria Geral da República de Angola, ter emitido, em 18 de Dezembro de 2017, um parecer legal a confirmar integralmente a legalidade dos contratos e do cumprimento das regras da contratação pública, o qual juntamos como **Doc. 1.** à presente Réplica.

### 131.º

O referido parecer legal, emitido pela Procuradoria Geral da República de Angola, foi elaborado no âmbito do financiamento da GE Capital EFS Financing ao Estado Angolano, sendo a legalidade dos contratos e cumprimento de todas as regras aplicáveis condição sine qua non para a existência do financiamento.


www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.com

Veja-se o ponto 10 do referido parecer legal da Procuradoria Geral da República de Angola: [...] "*as leis e regulamentos Angolanos relativos à contratação pública e concorrência (incluindo a Lei da Contratação Pública, aprovada pela Lei n.º 9/16 de 16 de Junho) e aplicáveis ao Mutuário [o Estado Angolano] e representantes para assinar e vincular em direitos e obrigações nos termos dos Contratos de Fornecimento e dos Contratos de Compra e Venda de que é parte foram integralmente cumpridos*";

### 133.º

Por outro lado, os 13 Contratos celebrados entre a Recorrente e as Recorridas PRODEL, ENDE e MINEA foram todos devidamente analisados pelo Tribunal de Contas, obtendo visto prévio, sendo que a fiscalização preventiva daquele tribunal tem por fim verificar se os actos e os contratos a ela sujeitos estão conforme às leis vigentes e se os encargos deles decorrentes têm cabimentação orçamental.

### 134.º

Ora, os referidos contratos tiveram a intervenção de dois órgãos de soberania, a Presidência da República e o Tribunal de Contas, de um Ministro do Governo de Angola e de administradores de empresas públicas, tendo ainda a confirmação de validade e de cumprimento de todas as regras legais aplicáveis pela própria Procuradoria Geral da República de Angola, representante dos Recorridos nesta acção.

### 135.º

O representante dos Recorridos não podia ignorar ou omitir a existência deste parecer que é flagrantemente contraditório com as excepções invocadas na Contestação e que demonstra, à saciedade, a mais profunda litigância de má-fé.

### 136.º

Perante todo o arrazoado de supostas invalidades, sem qualquer fundamento, da negação completa dos princípios basilares do Estado de Direito, e de uma actuação processual eivada da mais profunda má-fé, impõe-se concluir que a Contestação dos Recorridos e o eventual não reconhecimento dos direitos da Recorrente representará a inconfessável falência do Estado de Direito em Angola.

### 137.º

Com efeito, não poderá o Venerando Tribunal ignorar que o comportamento processual dos Recorridos preenche todos os requisitos previstos no artigo 456.º do CPC e que estes deverão ser condenados como litigantes de má-fé, com todas as consequências daí advenientes.

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Cabinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.c
benguela@sergioraimund

1493

20

Nestes termos e nos demais de Direito que doutamente se suprirão, devem as excepções invocadas pelos Recorridos ser julgadas totalmente improcedentes e os Recorridos condenados como litigantes de má-fé.

Junta: 1Documento, cópias legais e duplicados.

Luanda, 26 de Março de 2021.

**O Advogado**

Alberto Sérgio Raimundo
Céd. n 8477
NIF 2401336309

www.sergioraimundo.com

Escritório Benguela
Rua António José de Almeida
Nº 50, 1º andar

Escritório Calinda
Bairro Deolinda Rodrigues
Rua do Timor, Zona-B, Casa nº32

E-mails:
geral@sergioraimundo.com
benguela@sergioraimundo.c

**Proc. N.º 118/20**

**Verandos Judges Counselors**

**From the Supreme Plenary**

**AENERGY, SA**, Appellant in the matter identified above, notified of the Contestation presented by the Public Ministry, representing the State of Angola and the Executive Power Holder, relying on the terms in article 502 of the Civil Process Code ex vi art. 1, no. 2 of the Administrative Claim Process Regulation, submits its

**Reply**

Which includes the following terms:

\*       \*       \*       \*

**II - Of the Alleged Disregard of the Arbitral Tribunal**

**12**

The claim of preterition of the arbitral tribunal invoked by the Respondensts lacks any foundation, looking at the object of the action.

**13**

Instead, the Respondents affirmed that "the co-applicants PRODEL and ENDE, instead of acting on behalf of the State of Angola as project owners, signed eleven contracts on their own behalf."  (art. 55 of the Contestation).

**14**

The truth is that, for better or worse (we'll find out later), this reveals absolutely unequivocally and even accepted by all parties that those who entered into the contracts with the Appellant were PRODEL and ENDE, and that they are, therefore, the contracting parties.

**15**

But the undeniable truth is that no dispute exists or existed between the Appellant and its counterparts (PRODEL and ENDE) in the context of the interpretation the contracts they concluded.

**16**

It is undeniable that it was not the counterparties PRODEL and ENDE who rescinded the contracts.

1

**17**

It is undeniable that it was not the counterparties PRODEL and ENDE who appear to invoke reasons of public interest or contractual non-compliance to terminate the contracts that they had signed.

**18**

That who came to terminate the contracts, by rescission of the same, were the Respondents, the Executive Power Holder and MINEA.

**19**

Those who are not parties to the contracts - as expressly acknowledged (art. 55 of the Contestation).

**20**

The litigation that the Appellant has with the Respondents by virtue of the the rescission of the contracts is not a contractual litigation, as it has nothing to do with the interpretation or execution of such contracts.

**21**

It is a litigation with third parties to the contracts, who invoked their extracontractual prerogatives to terminate them.

**22**

In fact, the Respondents are not parties to the contracts generally.

**23**

Or, in the exceptional case that they are - as is the case with Respondent MINEA in contract no. 07/ENDE-PIP/2017 and in the contract relating to the Malembo Center - they did not invoke the existence of any dispute relative to these specific contracts.

**24**

Because the rescission of the contacts, including the exceptional cases in which Respondent MINEA is a party, correspond to the exercise of a prerogative based on reasons of public interest: in other words, the cause of the rescission was in all cases "the necessity, in the manifestation of public interest, of the cessation of the contracts," based on a "irremediable loss of confidence" in the Appellant (see point 8 of the order dismissing the complaint submitted to MINEA).

**25**

The present litigation between the Appellant and the Respondents is not, therefore, a contractual litigation, because the Respondents are not a party to the contracts in general and because, in the exceptional instance where they are, the litigation does not refer to the interpretation or execution of those specific contracts, but the (illegal) exercise of extracontractual prerogatives of rescission.

**26**

Since the present litigation is not a dispute between the parties regarding the interpretation and execution of the contracts, it is obviously outside the scope of the arbitration clauses.

**27**

On the other hand, even if this point is not accepted, for mere cautionary purposes, article 71 no. 1 of the RCPA establishes a prohibition against arbitration in administrative contracts, but for exceptions enumerated by law, which the Defendant has not demonstrated.

**28**

Therefore, any reasonableness of the invocation of the preterition of the arbitral tribunal must be dismissed in its entirety, and the corresponding exception should be deemed to be outright unfounded.

*       *       *       *

**Section 9: Of the Action Instituted in the Court for the South District of New York.**

**125**

As mentioned by the Respondents, the Appellant initiated proceedings on May 7, 2020 in the New York Court, claiming compensation for the losses and damages caused by the illegal rescission of the Contracts, among other allegations.

**126**

The Appellant initiated the action for damages in New York because that court is autonomous and independent of the present annulment claim, which only has the purpose of removing from the legal order the illegal act of the contractual rescission.

**127**

The passage of time and the grave effects of the damages caused by the illegal rescission of the contracts and the consequent destruction of the Appellant's business activities make it very difficult for the Appellant to reintegrate into its contracts, the only remedy available for this Annulment Appeal.

**128**

Although it contends that the Federal Court of New York is the appropriate forum for its damages action, the Appellant does not want to waive the present action, not least because the State of Angola has taken the position, in the proceedings that are ongoing in the New York Court, that the present action must be exhausted before Aenergy can recoup its damages.

**129**

The Appellant does not accept this position by the State of Angola asserted in the New York Court but does not want to fail to safeguard all its rights regarding obtaining compensation in that Court.